**AKERMAN LLP**
Kanika D. Corley (State Bar No. 223607)
*kanika.corley@akerman.com*
Jamel A.R. Greer (State Bar No. 342354)
*jamel.greer@akerman.com*
633 West Fifth Street, Suite 6400
Los Angeles, CA 90071
Telephone: (213) 688-9500
Facsimile: (213) 627-6342

Attorneys for Plaintiff
RINGCENTRAL, INC.

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA - SAN FRANCISCO DIVISION

| | |
|---|---|
| RINGCENTRAL, INC., a Delaware corporation,<br><br>　　　　　　Plaintiff,<br><br>v.<br><br>AMERISAVE MORTGAGE CORPORATION, a Georgia corporation, and DOES 1-10, inclusive,<br><br>　　　　　　Defendants. | CASE NO.<br><br>**COMPLAINT FOR:**<br>1. **BREACH OF WRITTEN CONTRACT – AGREEMENT FOR CONTACT CENTER SERVICES**<br>2. **BREACH OF WRITTEN CONTRACT – AGREEMENT FOR OFFICE SERVICES**<br>3. **COMMON COUNT – SERVICES RENDERED**<br><br>**DEMAND FOR JURY TRIAL** |

**COMPLAINT**

Plaintiff RingCentral, Inc., ("RingCentral"), for its Complaint against Defendant AmeriSave Mortgage Corporation ("AmeriSave") (RingCentral and AmeriSave collectively referred to as the "Parties"), alleges as follows:

## II.   NATURE OF THE ACTION

1. RingCentral, a leading provider of cloud communication and collaboration services for businesses, brings this action arising from the unexcused and unjustified failure of Defendant AmeriSave to comply with the express terms of the Parties' April, 2021 Master Services Agreement (the "MSA"), which has caused significant damage to RingCentral in an amount that exceeds the jurisdictional minimum.

2. Pursuant to the terms of the MSA, RingCentral provided certain customized cloud communication and business solution products and services to AmeriSave. In so doing, RingCentral made extraordinary accommodations for AmeriSave and incurred significant costs in an effort to meet AmeriSave's needs. Notwithstanding, AmeriSave's use of the Office Services product and despite RingCentral's customization of the Contact Center product to fit AmeriSave's specific needs, AmeriSave contends the products and services did not work. AmeriSave has not and continues to refuse to comply with its MSA obligations, including without limitation, the refusal to remit payment.

3. AmeriSave is in material breach of the MSA. As a result of AmeriSave's refusal and failure to compensate RingCentral for the significant harm AmeriSave has caused, RingCentral has no choice but to seek judicial intervention to recover the significant sums of money to which RingCentral is entitled to recover.

4. Pursuant to Section 13.B. of the MSA, RingCentral engaged AmeriSave in a good faith effort to resolve the instant dispute, which did not result in resolution.

## III.   PARTIES

5. Plaintiff RingCentral, Inc. is a Delaware corporation with its principal place of business in Belmont, California. RingCentral is a provider of cloud communication and collaboration services for businesses.

6. Defendant AmeriSave Mortgage Corporation is a direct-to-consumer mortgage lender. AmeriSave is a Georgia corporation with its principal place of business in Atlanta, Georgia.

7. Plaintiff is not presently aware of the true names and capacities, whether individual, associate, corporate or otherwise of Defendant DOES 1 through 10, or any of them, and therefore sues them by such fictitious names. Plaintiff will seek leave to amend this Complaint to show the true names and capacities of such fictitiously named Defendants when the same has been ascertained.

8. Plaintiff is informed and believes and thereon alleges that each of the Defendants designated herein as DOE is legally responsible in some manner for the acts, omissions and events alleged herein and has proximately caused damages and injury to Plaintiff as alleged herein.

9. Plaintiff is informed and believes and based thereon alleges, that at all times herein mentioned, each Defendant named herein as DOES 1 through 10, was and now is the agent, servant, employee, representative and/or alter ego of Defendant and, in doing the things hereinafter mentioned, was acting within the scope of his, her or its authority as such agent, servant, employee and/or representative with the permission and consent of Defendant.

### IV.    JURISDICTION AND VENUE

10. Pursuant to Section 13.A. of the MSA, the Parties agreed: "Any dispute arising out of or relating to this Agreement shall be governed and construed in accordance with the laws of the State of California, without regard to its choice of law rules and the parties agree to submit to the exclusive jurisdiction of, and venue in, the courts in San Francisco, California."

11. This action is within the original jurisdiction of this Court by virtue of 28 U.S.C. § 1332. Here, Plaintiff is a citizen of the state of California and Defendant a citizen of the state of Georgia. There exists complete diversity of citizenship between the Parties and the amount in controversy exceeds the jurisdictional minimum of $75,000.00, exclusive of interest and costs.

12. This Court has jurisdiction over the Defendant named herein because Defendant does business in the state of California and has sufficient minimum contacts within this district so as to render the exercise of jurisdiction by the courts of this district permissible under traditional notions of fair play and substantial justice.

13. Venue in this district satisfies the requirements of 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to the claims occurred in this district. Moreover, the operative agreement between the Parties expressly requires that any litigation that ensues under

the agreement must occur within San Francisco, California. Venue therefore lies in the United States District Court for the Northern District of California pursuant to 28 U.S.C. § 1391(b)(2).

### V. FACTUAL ALLEGATIONS

#### A. Background

14. Plaintiff RingCentral is a leading provider of cloud communication platforms that include message, video, phone, and contact center services. RingCentral provided two key solutions relevant here: (1) RingCentral MVP ("MVP"), a "Unified Communications as a Service" platform for internal team messaging, video meetings, and phone, which is also referred to as the "Office Services" product;[1] and (2) a Contact Center as a Service solution ("Contact Center"), a cloud-hosted service that allows a business to engage with their customers by digital channels and incoming and outgoing phone calls.

15. Before entering into the MSA, AmeriSave communicated to RingCentral an "urgent" need for a custom, cloud-based communication platform system to complement the company's growth. According to AmeriSave's representatives, the company needed a more scalable, integrated Unified Communications as a Service and Contact Center as a Service platform. In response to AmeriSave's request, the Parties engaged in multiple lengthy and substantive discussions, along with demonstrations of the products and services RingCentral believed could meet AmeriSave's needs.

16. The Parties' pre-MSA meetings included the events that follow. During a March 23, 2021 meeting between RingCentral and AmeriSave, RingCentral presented to AmeriSave a demonstration of its Contact Center solution and listened to AmeriSave representatives describe the problems with AmeriSave's existing system that it wanted RingCentral to address.

17. And, on April 2, 2021, RingCentral presented a demonstration of its MVP/Office Services offerings to AmeriSave's executives and again listened to AmeriSave representatives describe the problems it wanted RingCentral to address.

///

---

[1] RingCentral now offers its Unified Communications as as Service platform under the name RingEX. For convenience in this Complaint, RingCentral continues to refer to the service as RingCentral MVP.

### B. The Master Services Agreement

18. In April, 2021, RingCentral and AmeriSave entered into a MSA for RingCentral to provide a customized Unified Communications as a Service platform ("UCaaS" or "MVP") and Contact Center as a Service solution ("CCaaS" or "Contact Center"). A true and correct copy of the MSA is attached hereto as **Exhibit 1** and incorporated herein by this reference.

19. The MSA contains seven separate attachments, each of which describes the products and services a customer may order. The seven attachments (Attachments A – G) are as follows: (A) RingCentral Office Services; (B) RingCentral Contact Center Services; (C) Professional Services Agreement; (D) Service Level Agreement for Office Services; (E) Service Level Agreement for Contact Center Services; (F) Service Level Agreement for Support Services; and (G) Security Addendum. Additionally, Section 2 of the MSA provides that the "Customer may order the Services set forth in the relevant Attachments [] by executing an Order Form."

#### 1) Contact Center Agreement

20. Consistent with Section 2 of the MSA, AmeriSave agreed to purchase certain products and services from RingCentral as set forth in the Initial Order Form for Contact Center Services and modified by the Statement of Work executed by the Parties (collectively, the ("Contact Center Agreement")). The order for Contact Center Services was executed at a reduced rate of ▮▮▮▮▮▮ over an initial term of 60 months. RingCentral also offered a one-time credit of ▮▮▮▮▮▮, which would be applied against charges included in future invoices. Accordingly, the total contract value for Contact Center was ▮▮▮▮▮▮. True and correct copies of the Initial Order Form for Contact Center Services and Statement of Work are attached hereto as **Exhibits 2** and **3** and incorporated herein by this reference.

21. After the Parties executed the Contact Center Agreement, RingCentral began developing the Contact Center in accordance with the agreement's terms.

22. On or about August 30, 2021, AmeriSave executed the Go Live Readiness and Acceptance Documents ("Acceptance Documents") and days later, on September 2, 2021, RingCentral implemented the Contact Center. A true and correct copy of the Acceptance Documents is attached hereto as **Exhibit 4** and incorporated herein by this reference. The legal significance of the

Acceptance Documents is that they reflect AmeriSave's acknowledgement and affirmation that all business requirements had been completed, network configurations and software applications installed and enabled; all agents completed training, logged in and completed the activities required; that managers/supervisors completed training, understood the reporting and were ready to manage their contact center; that all project documentation had been reviewed and approved; that the support process had been reviewed and that AmeriSave had a thorough understanding of same. (*See* Acceptance Documents, at 3-4.)

23. Within the Acceptance Documents, AmeriSave explicitly affirmed and acknowledged that "[a]s of the date of the Go Live Acceptance, the Contact Center application functions as specified in this Business Requirements Document ("BRD"). AmeriSave accepts the application as designed." (*Id*. at 4). The foregoing establishes that as of August 30, 2021, AmeriSave acknowledged receipt of the core Contact Center product and services that RingCentral delivered pursuant to the Agreement for Contact Center Services.

24. Notwithstanding its execution of the Acceptance Documents and BRD, the Parties conferred on multiple occasions regarding modifications AmeriSave sought to have included within the custom Contact Center product following the September 2, 2021 implementation of the Contact Center. RingCentral assisted with AmeriSave's modification requests.

25. On or about October 20, 2021, October 28, 2021, and November 2, 2021 RingCentral presented a series of revised Contact Center solutions, each of which accounted for new and everchanging demands AmeriSave presented concerning the characteristics of RingCentral's custom Contact Center. Each new version strayed farther from the Parties' fully executed Statement of Work. Despite RingCentral's customization of the Contact Center product to fit AmeriSave's specific needs, AmeriSave contends the products and services did not work.

26. Ultimately, notwithstanding RingCentral's performance under the Contact Center Agreement, AmeriSave breached the Parties' agreement by notifying RingCentral on or about January 31, 2022 that AmeriSave was unilaterally terminating the MSA. In so doing, AmeriSave failed and refused to tender payment absent legal justification or excuse.

/ / /

### 2) MVP Agreement

27. Consistent with Section 2 of the MSA, AmeriSave ordered certain products and services from RingCentral, and RingCentral agreed to provide them, the evidence for which is set forth in the Initial Order Form for Office Services and modified by the Statement of Work executed by the Parties (collectively, the ("MVP Agreement"). Specifically, RingCentral was to provide MVP (a communication platform that includes team messaging, video meetings, and a cloud phone system) to AmeriSave's employees. According to the executed service form, the "Service Commitment Period" is for an initial term of 60 months with a renewal term of 12 months, at a rate of ███████. As to these services, RingCentral granted a one-time credit in the amount of ███████. Accordingly, the total contract value for MVP was ███████. True and correct copies of the Initial Order Form for Office Services and Statement of Work are attached hereto as **Exhibits 5** and **6** and incorporated herein by this reference.

28. After the Parties executed the MVP Agreement, RingCentral began preparing the product and services in accordance with the agreement's terms.

29. On or about August 31, 2021, RingCentral delivered its MVP product and services to AmeriSave in accordance with the MVP Agreement. AmeriSave formally acknowledged receipt of the MVP Services Package on August 31, 2021. A true and correct copy of AmeriSave's August 31, 2021 email acknowledging receipt is attached hereto as **Exhibit 7** and incorporated herein by this reference.

30. Numerous AmeriSave employees used the MVP product and services for multiple months.

31. Notwithstanding RingCentral's performance under the MVP Agreement, AmeriSave breached the Parties' agreement by notifying RingCentral on or about January 31, 2022 that AmeriSave was unilaterally terminating the MSA. In so doing, AmeriSave failed and refused to tender payment absent legal justification or excuse.

///

///

///

# FIRST CAUSE OF ACTION

## (Breach of Contract – Agreement for Contact Center Services)

### Against All Defendants

32. Plaintiff repeats and realleges each and every allegation contained in the above paragraphs as though set forth fully herein.

33. In April, 2021, the Parties executed the MSA. Consistent with Section 2 of the MSA, the Parties executed the Contact Center Agreement on or about April 28, 2021, under which RingCentral agreed to provide Contact Center products and services to AmeriSave in exchange for monetary consideration.

34. Plaintiff provided the products and services to Defendant in accordance with the terms of the Contact Center Agreement.

35. The products and services provided by Plaintiff to Defendant were provided at the request and direction of Defendant, including Defendant's officers and employees including without limitation Defendant's President, Mike Berte, and Defendant's Chief Information and Strategy Officer, Magesh Sarma.

36. Plaintiff performed each and every condition, covenant and obligation required on its part to be performed in accordance with the terms and conditions of the Parties' agreement, and Defendant's performance thereunder has not been excused.

37. Notwithstanding Plaintiff's compliance with the terms of the Contact Center Agreement, Defendant breached said agreement by failing to make payment for the products and services provided to it in accordance with the agreement's terms.

38. Here, Defendant contracted to obtain custom Contact Center services at a reduced rate of ██████ over an initial term of 60 months. RingCentral offered a one-time credit of ██████, which would be applied against charges included in future invoices. As a result, the total contract value for the Contact Center was ██████. Accordingly, as a direct, foreseeable, and proximate result of Defendant's breach of the Parties' agreement, Plaintiff has suffered and continues to suffer damages in an amount not less than ██████ for Defendant's breach of the Contact Center Agreement.

39. Plaintiff is therefore entitled to relief as set forth in the prayer below.

## SECOND CAUSE OF ACTION

### (Breach of Contract – Agreement for Office Services)

### Against All Defendants

40. Plaintiff repeats and realleges each and every allegation contained in the above paragraphs as though set forth fully herein.

41. In April, 2021, the Parties executed the MSA. Consistent with Section 2 of the MSA, the Parties executed the MVP Agreement on or about April 28, 2021, under which RingCentral agreed to provide products and services constituting MVP to AmeriSave in exchange for valid consideration.

42. Plaintiff provided the products and services to Defendant in accordance with the terms of the MVP Agreement.

43. The products and services provided by Plaintiff to Defendant were provided at the request and direction of Defendant, including Defendant's officers and employees including without limitation Defendant's President, Mike Berte, and Defendant's Chief Information and Strategy Officer, Magesh Sarma.

44. Plaintiff has performed each and every condition, covenant and obligation required on its part to be performed in accordance with the terms and conditions of the Parties' agreement, and Defendant's performance thereunder has not been excused.

45. Notwithstanding Plaintiff's compliance with the terms of the MVP Agreement, Defendant has breached said agreement by failing to make payment for the products and services provided to it in accordance with the agreement's terms.

46. Here, Defendant contracted to obtain MVP for an initial term of 60 months with a renewal term of 12 months, at a rate of █████████. As to these services, RingCentral granted a one-time credit in the amount of █████████. Accordingly, as a direct, foreseeable, and proximate result of Defendant's breach of the agreement, Plaintiff has suffered and continues to suffer damages in an amount not less than █████████.

47. Plaintiff is therefore entitled to relief as set forth in the prayer below.

/ / /

/ / /

### THIRD CAUSE OF ACTION

### (Common Count – Services Rendered)

### Against All Defendants

48. Plaintiff repeats and realleges each and every allegation contained in the above paragraphs as though set forth fully herein.

49. AmeriSave requested, by words or conduct, that RingCentral perform services for the benefit of AmeriSave.

50. RingCentral performed the services as requested.

51. AmeriSave has not paid RingCentral for the services.

52. The reasonable value of the services were provided.

53. "In California, a common count claim for services rendered requires a plaintiff to show (1) that the defendant requested the plaintiff perform services for the defendant's benefit; (2) that plaintiff performed the services as requested; (3) that defendant has not paid for the services; and (4) the reasonable value of the services provided." *County of San Bernardino v. United Health Group Inc.* (C.D. Cal., Jan. 7, 2022, No. EDCV21595JGBKKX) 2022 WL 886448, at *7; *see also Utility Audit Co., Inc. v. City of Los Angeles* (2003) 112 Cal.App.4th 950, 958 ("A common count is proper whenever the plaintiff claims a sum of money due, either as an indebtedness in a sum certain, or for the reasonable value of services, goods, etc., furnished. It makes no difference in such a case that the proof shows the original transaction to be an express contract, a contract implied in fact, or a quasi-contract.") "The practice of pleading common counts in California has been too long established to be open to question. (*Pike v. Zadig* (1915) 171 Cal. 273, 276, 152 P. 923). '[T]he common counts are sufficient to state a cause of action upon either a contract implied in fact [citations] or a contract implied in law.'" *Kawasho Internat., U.S.A. Inc. v. Lakewood Pipe Service, Inc.* (1983) 152 Cal.App.3d 785, 793.

54. Here, the Parties entered into the into the MSA in April, 2021. Execution of the MSA came after extensive pre-engagement "discovery" meetings with AmeriSave in order to determine the products and services appropriate for AmeriSave's needs. Based on the feedback and discussion between the Parties, AmeriSave requested that RingCentral develop an integrated UCaaS (Unified

Communications as a Service) and CCaaS (Contact Center as a Service) platform – Contact Center and MVP.

55. RingCentral performed the services as requested and incurred significant costs in an effort to meet AmeriSave's needs throughout the RingCentral's development of the highly customized UCaaS (Unified Communications as a Service) and CCaaS (Contact Center as a Service) platforms requested by AmeriSave.

56. Notwithstanding RingCentral's performance of the services as requested, AmeriSave has failed to tender payment for the services rendered.

57. The reasonable value of the services that RingCentral provided to AmeriSave in accordance with AmeriSave's request total no less than ███████.

58. Plaintiff is therefore entitled to relief as set forth in the prayer below.

## PRAYER FOR RELIEF

WHEREFORE, RingCentral prays for judgment as against Defendant as follows:

### On the First and Second Causes of Action:

1. For compensatory damages in an amount of not less than ███████, according to proof at trial;
2. Other economic and consequential damages in an amount to be determined at trial;
3. For such other and further relief as the Court may deem to be just and proper.

### On the Third Cause of Action:

1. For restitution from Defendant in an amount of not less than ███████ according to proof at trial;
2. Other economic and consequential damages in an amount to be determined at trial;
3. For such other and further relief as the Court may deem to be just and proper.

DATED: October 9, 2025                                AKERMAN LLP

By: *Kanika D. Corley*
Kanika D. Corley
Jamel A.R Greer
Attorneys for Plaintiff
RINGCENTRAL, INC

10
**COMPLAINT**

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands trial by jury for all counts, claims, or issues in this action that are triable as a matter of right to a jury.

DATED: October 9, 2025                    **AKERMAN LLP**


By: *Kanika D. Corley*
Kanika D. Corley
Jamel A.R. Greer
Attorneys for Plaintiff
RINGCENTRAL, INC