**BARNES & THORNBURG LLP**
ERIC S. FISHER (SBN 240545)
efisher@btlaw.com
KRISTIN L. FROEHLE (SBN 330125)
Kristin.Froehle@btlaw.com
SYDNIE ZACHARY (*Pro Hac Vice forthcoming*)
Sydnie.Zachary@btlaw.com
2029 Century Park East, Suite 300
Los Angeles, CA 90067
Telephone:    (310) 284-3880
Facsimile:    (310) 284-3894

Attorneys for Defendant and Counter Claimant
AMERISAVE MORTGAGE
CORPORATION

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA – SAN FRANCISCO DIVISION

| | |
|---|---|
| RINGCENTRAL, INC., a Delaware corporation,<br><br>　　　Plaintiff and Counter Defendant,<br><br>　　vs.<br><br>AMERISAVE MORTGAGE CORPORATION, a Georgia corporation, and DOES 1-10, inclusive,<br><br>　　　Defendant and Counter Claimant. | Case No. 4:25-cv-08694-KAW<br><br>District Judge James V. Selna<br><br>**DEFENDANT'S ANSWER TO PLAINTIFF'S COMPLAINT AND COUNTERCLAIM** |

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**ANSWER**

Defendant AmeriSave Mortgage Corporation ("AmeriSave" or "Defendant") hereby submits its Answer to the Complaint (the "Complaint") of Plaintiff RingCentral, Inc. ("RingCentral" or "Plaintiff"). Defendant notes that, for ease of future reference, Plaintiff's Complaint allegations are set forth verbatim, with Defendant's responses following each allegation (in bold).

Plaintiff RingCentral, Inc., ("RingCentral"), for its Complaint against Defendant AmeriSave Mortgage Corporation ("AmeriSave") (RingCentral and AmeriSave collectively referred to as the "Parties"), alleges as follows:

## II[1].    NATURE OF THE ACTION

1.      RingCentral, a leading provider of cloud communication and collaboration services for businesses, brings this action arising from the unexcused and unjustified failure of Defendant AmeriSave to comply with the express terms of the Parties' April, 2021 Master Services Agreement (the "MSA"), which has caused significant damage to RingCentral in an amount that exceeds the jurisdictional minimum.

**ANSWER:**      **Defendant denies the allegations in Paragraph 1**.

2.      Pursuant to the terms of the MSA, RingCentral provided certain customized cloud communication and business solution products and services to AmeriSave. In so doing, RingCentral made extraordinary accommodations for AmeriSave and incurred significant costs in an effort to meet AmeriSave's needs. Notwithstanding, AmeriSave's use of the Office Services product and despite RingCentral's customization of the Contact Center product to fit AmeriSave's specific needs, AmeriSave contends the products and services did not work. AmeriSave has not and continues to refuse to comply with its MSA obligations, including without limitation, the refusal to remit payment.

**ANSWER:**      **Defendant admits only that the products and services did not work. Defendant denies the remaining allegations in Paragraph 2.**

---

[1] The version of the Complaint that RingCentral filed and served does not include a Section I.

49436287.6

1

DEFENDANT'S ANSWER TO PLAINTIFF'S COMPLAINT AND COUNTERCLAIM

3.     AmeriSave is in material breach of the MSA. As a result of AmeriSave's refusal and failure to compensate RingCentral for the significant harm AmeriSave has caused, RingCentral has no choice but to seek judicial intervention to recover the significant sums of money to which RingCentral is entitled to recover.

**ANSWER:     Defendant denies the allegations in Paragraph 3.**

4.     Pursuant to Section 13.B. of the MSA, RingCentral engaged AmeriSave in a good faith effort to resolve the instant dispute, which did not result in resolution.

**ANSWER:     Defendant admits the allegations in Paragraph 4.**

### III.    PARTIES

5.     Plaintiff RingCentral, Inc. is a Delaware corporation with its principal place of business in Belmont, California. RingCentral is a provider of cloud communication and collaboration services for businesses.

**ANSWER:     On information and belief, Defendant admits the allegations in Paragraph 5.**

6.     Defendant AmeriSave Mortgage Corporation is a direct-to-consumer mortgage lender.  AmeriSave is a Georgia corporation with its principal place of business in Atlanta, Georgia.

**ANSWER:     Defendant admits the allegations in Paragraph 6.**

7.     Plaintiff is not presently aware of the true names and capacities, whether individual, associate, corporate or otherwise of Defendant DOES 1 through 10, or any of them, and therefore sues them by such fictitious names. Plaintiff will seek leave to amend this Complaint to show the true names and capacities of such fictitiously named Defendants when the same has been ascertained.

**ANSWER:     Defendant lacks sufficient information to admit or deny the truth or falsity of the allegations in Paragraph 7, and therefore denies same.**

8.     Plaintiff is informed and believes and thereon alleges that each of the Defendants designated herein as DOE is legally responsible in some manner for the acts, omissions and events alleged herein and has proximately caused damages and injury to Plaintiff as alleged herein.

Barnes &
Thornburg LLP
Attorneys At Law
Los Angeles

49436287.6

2

DEFENDANT'S ANSWER TO PLAINTIFF'S COMPLAINT AND COUNTERCLAIM

**ANSWER:** **Defendant lacks sufficient information to admit or deny the truth or falsity of the allegations in Paragraph 8, and therefore denies same.**

9.    Plaintiff is informed and believes and based thereon alleges, that at all times herein mentioned, each Defendant named herein as DOES 1 through 10, was and now is the agent, servant, employee, representative and/or alter ego of Defendant and, in doing the things hereinafter mentioned, was acting within the scope of his, her or its authority as such agent, servant, employee and/or representative with the permission and consent of Defendant.

**ANSWER:** **Defendant lacks sufficient information to admit or deny the truth or falsity of the allegations in Paragraph 9, and therefore denies same.**

## IV.    JURISDICTION AND VENUE

10.    Pursuant to Section 13.A. of the MSA, the Parties agreed: "Any dispute arising out of or relating to this Agreement shall be governed and construed in accordance with the laws of the State of California, without regard to its choice of law rules and the parties agree to submit to the exclusive jurisdiction of, and venue in, the courts in San Francisco, California."

**ANSWER:** **Defendant admits the allegations in Paragraph 10.**

11.    This action is within the original jurisdiction of this Court by virtue of 28 U.S.C. § 1332. Here, Plaintiff is a citizen of the state of California and Defendant a citizen of the state of Georgia. There exists complete diversity of citizenship between the Parties and the amount in controversy exceeds the jurisdictional minimum of $75,000.00, exclusive of interest and costs.

**ANSWER:** **On information and belief, Defendant admits the allegations in Paragraph 11.**

12.    This Court has jurisdiction over the Defendant named herein because Defendant does business in the state of California and has sufficient minimum contacts within this district so as to render the exercise of jurisdiction by the courts of this district permissible under traditional notions of fair play and substantial justice.

**ANSWER:** **Defendant admits the allegations in Paragraph 12.**

13.    Venue in this district satisfies the requirements of 28 U.S.C. § 1391(b)(2) because a

BARNES &
THORNBURG LLP
ATTORNEYS AT LAW
LOS ANGELES

49436287.6

3

DEFENDANT'S ANSWER TO PLAINTIFF'S COMPLAINT AND COUNTERCLAIM

substantial part of the events or omissions giving rise to the claims occurred in this district. Moreover, the operative agreement between the Parties expressly requires that any litigation that ensues under the agreement must occur within San Francisco, California. Venue therefore lies in the United States District Court for the Northern District of California pursuant to 28 U.S.C. § 1391(b)(2).

**ANSWER:    Defendant admits the allegations in Paragraph 13.**

## V.    FACTUAL ALLEGATIONS

### A.    Background

14.    Plaintiff RingCentral is a leading provider of cloud communication platforms that include message, video, phone, and contact center services. RingCentral provided two key solutions relevant here: (1) RingCentral MVP ("MVP"), a "Unified Communications as a Service" platform for internal team messaging, video meetings, and phone, which is also referred to as the "Office Services" product;[2] and (2) a Contact Center as a Service solution ("Contact Center"), a cloud-hosted service that allows a business to engage with their customers by digital channels and incoming and outgoing phone calls.

**ANSWER:    Defendant denies the allegations in Paragraph 14 to the extent they rely on the false assertion that Plaintiff provided key solutions to Defendant. Defendant admits the remaining allegations in Paragraph 14.**

15.    Before entering into the MSA, AmeriSave communicated to RingCentral an "urgent" need for a custom, cloud-based communication platform system to complement the company's growth. According to AmeriSave's representatives, the company needed a more scalable, integrated Unified Communications as a Service and Contact Center as a Service platform. In response to AmeriSave's request, the Parties engaged in multiple lengthy and substantive discussions, along with demonstrations of the products and services RingCentral believed could meet AmeriSave's needs.

---

[2] RingCentral now offers its Unified Communications as as **[sic]** Service platform under the name RingEX. For convenience in this Complaint, RingCentral continues to refer to the service as RingCentral MVP.

**ANSWER:**    Defendant admits that the Parties engaged in meetings and discussions in which RingCentral made representations to AmeriSave on which AmeriSave relied in deciding to work with RingCentral. As stated, Defendant denies the remaining allegations in Paragraph 15.

16.    The Parties' pre-MSA meetings included the events that follow. During a March 23, 2021 meeting between RingCentral and AmeriSave, RingCentral presented to AmeriSave a demonstration of its Contact Center solution and listened to AmeriSave representatives describe the problems with AmeriSave's existing system that it wanted RingCentral to address.

**ANSWER:**    Defendant admits that the Parties conducted the referenced meeting. As stated, Defendant denies the remaining allegations in Paragraph 16.

17.    And, on April 2, 2021, RingCentral presented a demonstration of its MVP/Office Services offerings to AmeriSave's executives and again listened to AmeriSave representatives describe the problems it wanted RingCentral to address.

**ANSWER:**    Defendant admits that the Parties conducted the referenced meeting. As stated, Defendant the allegations in Paragraph 17.

B.    **The Master Services Agreement**

18.    In April, 2021, RingCentral and AmeriSave entered into a MSA for RingCentral to provide a customized Unified Communications as a Service platform ("UCaaS" or "MVP") and Contact Center as a Service solution ("CCaaS" or "Contact Center"). A true and correct copy of the MSA is attached hereto as **Exhibit 1** and incorporated herein by this reference.

**ANSWER:**    Defendant states that the MSA speaks for itself. Defendant denies any additional allegations in Paragraph 18.

19.    The MSA contains seven separate attachments, each of which describes the products and services a customer may order. The seven attachments (Attachments A – G) are as follows: (A) RingCentral Office Services; (B) RingCentral Contact Center Services; (C) Professional Services Agreement; (D) Service Level Agreement for Office Services; (E) Service Level Agreement for Contact Center Services; (F) Service Level Agreement for Support Services; and (G) Security

BARNES &
THORNBURG LLP
ATTORNEYS AT LAW
LOS ANGELES

Addendum. Additionally, Section 2 of the MSA provides that the "Customer may order the Services set forth in the relevant Attachments [] by executing an Order Form."

**ANSWER:**    **Defendant states that the MSA speaks for itself. Defendant denies any additional allegations in Paragraph 18.**

### 1)    Contact Center Agreement

20.    Consistent with Section 2 of the MSA, AmeriSave agreed to purchase certain products and services from RingCentral as set forth in the Initial Order Form for Contact Center Services and modified by the Statement of Work executed by the Parties (collectively, the ("Contact Center Agreement")). The order for Contact Center Services was executed at a reduced rate of [*See Complaint*] over an initial term of 60 months. RingCentral also offered a one-time credit of [*See Complaint*], which would be applied against charges included in future invoices. Accordingly, the total contract value for Contact Center was [*See Complaint*]. True and correct copies of the Initial Order Form for Contact Center Services and Statement of Work are attached hereto as **Exhibits 2** and **3** and incorporated herein by this reference.

**ANSWER:**    **Defendant states that the Contact Center Agreement speaks for itself. Defendant denies any additional allegations in Paragraph 20.**

21.    After the Parties executed the Contact Center Agreement, RingCentral began developing the Contact Center in accordance with the agreement's terms.

**ANSWER:**    **Defendant denies the allegations in Paragraph 21.**

22.    On or about August 30, 2021, AmeriSave executed the Go Live Readiness and Acceptance Documents ("Acceptance Documents") and days later, on September 2, 2021, RingCentral implemented the Contact Center. A true and correct copy of the Acceptance Documents is attached hereto as **Exhibit 4** and incorporated herein by this reference. The legal significance of the Acceptance Documents is that they reflect AmeriSave's acknowledgement and affirmation that all business requirements had been completed, network configurations and software applications installed and enabled; all agents completed training, logged in and completed the activities required; that managers/supervisors completed training, understood the reporting and

were ready to manage their contact center; that all project documentation had been reviewed and approved; that the support process had been reviewed and that AmeriSave had a thorough understanding of same. (*See* Acceptance Documents, at 3-4.)

**ANSWER:** **Defendant states that each of the Acceptance Documents speaks for itself. Defendant denies any additional allegations in Paragraph 22.**

23.    Within the Acceptance Documents, AmeriSave explicitly affirmed and acknowledged that "[a]s of the date of the Go Live Acceptance, the Contact Center application functions as specified in this Business Requirements Document ("BRD"). AmeriSave accepts the application as designed." (Id. at 4). The foregoing establishes that as of August 30, 2021, AmeriSave acknowledged receipt of the core Contact Center product and services that RingCentral delivered pursuant to the Agreement for Contact Center Services.

**ANSWER:** **Defendant states that each of the Acceptance Documents speaks for itself. Defendant denies any additional allegations in Paragraph 23.**

24.    Notwithstanding its execution of the Acceptance Documents and BRD, the Parties conferred on multiple occasions regarding modifications AmeriSave sought to have included within the custom Contact Center product following the September 2, 2021 implementation of the Contact Center. RingCentral assisted with AmeriSave's modification requests.

**ANSWER:** **Defendant admits that the Parties conferred on multiple occasions following the September 2, 2021 implementation of the Contact Center. As stated, Defendant denies the remaining allegations in Paragraph 24.**

25.    On or about October 20, 2021, October 28, 2021, and November 2, 2021 RingCentral presented a series of revised Contact Center solutions, each of which accounted for new and everchanging demands AmeriSave presented concerning the characteristics of RingCentral's custom Contact Center. Each new version strayed farther from the Parties' fully executed Statement of Work. Despite RingCentral's customization of the Contact Center product to fit AmeriSave's specific needs, AmeriSave contends the products and services did not work.

**ANSWER:** **Defendant admits that RingCentral presented a series of revised**

Contract Center solutions. **Defendant further admits that the products and services did not work. Defendant denies the remaining allegations in Paragraph 25.**

26.     Ultimately, notwithstanding RingCentral's performance under the Contact Center Agreement, AmeriSave breached the Parties' agreement by notifying RingCentral on or about January 31, 2022 that AmeriSave was unilaterally terminating the MSA. In so doing, AmeriSave failed and refused to tender payment absent legal justification or excuse.

**ANSWER:**     **Defendant denies the allegations in Paragraph 26.**

**2)     MVP Agreement**

27.     Consistent with Section 2 of the MSA, AmeriSave ordered certain products and services from RingCentral, and RingCentral agreed to provide them, the evidence for which is set forth in the Initial Order Form for Office Services and modified by the Statement of Work executed by the Parties (collectively, the ("MVP Agreement"). Specifically, RingCentral was to provide MVP (a communication platform that includes team messaging, video meetings, and a cloud phone system) to AmeriSave's employees. According to the executed service form, the "Service Commitment Period" is for an initial term of 60 months with a renewal term of 12 months, at a rate of [*See Complaint*]. As to these services, RingCentral granted a one-time credit in the amount of [*See Complaint*]. Accordingly, the total contract value for MVP was [*See Complaint*]. True and correct copies of the Initial Order Form for Office Services and Statement of Work are attached hereto as **Exhibits 5** and **6** and incorporated herein by this reference.

**ANSWER:**     **Defendant asserts that the MVP Agreement speaks for itself. Defendant denies any additional allegations in paragraph 27.**

28.     After the Parties executed the MVP Agreement, RingCentral began preparing the product and services in accordance with the agreement's terms.

**ANSWER:**     **Defendant denies the allegations in Paragraph 28.**

29.     On or about August 31, 2021, RingCentral delivered its MVP product and services to AmeriSave in accordance with the MVP Agreement. AmeriSave formally acknowledged receipt of the MVP Services Package on August 31, 2021. A true and correct copy of AmeriSave's August

BARNES &
THORNBURG LLP
ATTORNEYS AT LAW
LOS ANGELES

49436287.6

8

DEFENDANT'S ANSWER TO PLAINTIFF'S COMPLAINT AND COUNTERCLAIM

31, 2021 email acknowledging receipt is attached hereto as **Exhibit 7** and incorporated herein by this reference.

**ANSWER:** **Defendant admits that Exhibit 7 is a true and correct copy of the August 31, 2021 email, and asserts that the email speaks for itself. As stated, Defendant denies the remaining allegations in Paragraph 29.**

30.    Numerous AmeriSave employees used the MVP product and services for multiple months.

**ANSWER:** **As stated, Defendant denies the allegations in Paragraph 30.**

31.    Notwithstanding RingCentral's performance under the MVP Agreement, AmeriSave breached the Parties' agreement by notifying RingCentral on or about January 31, 2022 that AmeriSave was unilaterally terminating the MSA. In so doing, AmeriSave failed and refused to tender payment absent legal justification or excuse.

**ANSWER:** **Defendant denies the allegations in Paragraph 31.**

**FIRST CAUSE OF ACTION**

**(Breach of Contract – Agreement for Contact Center Services)**

**Against All Defendants**

32.    Plaintiff repeats and realleges each and every allegation contained in the above paragraphs as though set forth fully herein.

**ANSWER:** **Defendant incorporates by references its responses to each preceding paragraph as though fully set forth herein.**

33.    In April, 2021, the Parties executed the MSA. Consistent with Section 2 of the MSA, the Parties executed the Contact Center Agreement on or about April 28, 2021, under which RingCentral agreed to provide Contact Center products and services to AmeriSave in exchange for monetary consideration.

**ANSWER:** **Defendant asserts that the MSA speaks for itself. Defendant asserts that the Contact Center Agreement speaks for itself. Defendant denies any additional allegations in paragraph 33.**

34.     Plaintiff provided the products and services to Defendant in accordance with the terms of the Contact Center Agreement.

**ANSWER:    Defendant denies the allegations in Paragraph 34.**

35.     The products and services provided by Plaintiff to Defendant were provided at the request and direction of Defendant, including Defendant's officers and employees including without limitation Defendant's President, Mike Berte, and Defendant's Chief Information and Strategy Officer, Magesh Sarma.

**ANSWER:    Defendant denies the allegations in Paragraph 35.**

36.     Plaintiff performed each and every condition, covenant and obligation required on its part to be performed in accordance with the terms and conditions of the Parties' agreement, and Defendant's performance thereunder has not been excused.

**ANSWER:    Defendant denies the allegations in Paragraph 36.**

37.     Notwithstanding Plaintiff's compliance with the terms of the Contact Center Agreement, Defendant breached said agreement by failing to make payment for the products and services provided to it in accordance with the agreement's terms.

**ANSWER:    Defendant denies the allegations in Paragraph 37.**

38.     Here, Defendant contracted to obtain custom Contact Center services at a reduced rate of [*See Complaint*] over an initial term of 60 months. RingCentral offered a one-time credit of [*See Complaint*], which would be applied against charges included in future invoices. As a result, the total contract value for the Contact Center was [*See Complaint*]. Accordingly, as a direct, foreseeable, and proximate result of Defendant's breach of the Parties' agreement, Plaintiff has suffered and continues to suffer damages in an amount not less than [*See Complaint*] for Defendant's breach of the Contact Center Agreement.

**ANSWER:    Defendant asserts that the Contract Center Agreement speaks for itself. To the extent that a further response is required, Defendant denies the allegations in Paragraph 38.**

39.     Plaintiff is therefore entitled to relief as set forth in the prayer below.

BARNES &
THORNBURG LLP
ATTORNEYS AT LAW
LOS ANGELES

49436287.6

10

DEFENDANT'S ANSWER TO PLAINTIFF'S COMPLAINT AND COUNTERCLAIM

**ANSWER:** **Defendant states that the allegations in Paragraph 39 are legal conclusions to which no response is required. To the extent that a further response is required, Defendant denies the remaining allegations in Paragraph 39.**

## SECOND CAUSE OF ACTION

### (Breach of Contract – Agreement for Office Services)

### Against All Defendants

40.     Plaintiff repeats and realleges each and every allegation contained in the above paragraphs as though set forth fully herein.

**ANSWER:** **Defendant incorporates by references its responses to each preceding paragraph as though fully set forth herein.**

41.     In April, 2021, the Parties executed the MSA. Consistent with Section 2 of the MSA, the Parties executed the MVP Agreement on or about April 28, 2021, under which RingCentral agreed to provide products and services constituting MVP to AmeriSave in exchange for valid consideration.

**ANSWER:** **Defendant asserts that the MSA speaks for itself. Defendant asserts that the Contact Center Agreement speaks for itself. Defendant denies any additional allegations in paragraph 41.**

42.     Plaintiff provided the products and services to Defendant in accordance with the terms of the MVP Agreement.

**ANSWER:** **Defendant denies the allegations in Paragraph 42.**

43.     The products and services provided by Plaintiff to Defendant were provided at the request and direction of Defendant, including Defendant's officers and employees including without limitation Defendant's President, Mike Berte, and Defendant's Chief Information and Strategy Officer, Magesh Sarma.

**ANSWER:** **Defendant denies the allegations in Paragraph 43.**

44.     Plaintiff has performed each and every condition, covenant and obligation required on its part to be performed in accordance with the terms and conditions of the Parties' agreement,

BARNES &
THORNBURG LLP
ATTORNEYS AT LAW
LOS ANGELES

49436287.6                                          11
DEFENDANT'S ANSWER TO PLAINTIFF'S COMPLAINT AND COUNTERCLAIM

and Defendant's performance thereunder has not been excused.

**ANSWER:    Defendant denies the allegations in Paragraph 44.**

45.    Notwithstanding Plaintiff's compliance with the terms of the MVP Agreement, Defendant has breached said agreement by failing to make payment for the products and services provided to it in accordance with the agreement's terms.

**ANSWER:    Defendant denies the allegations in Paragraph 45.**

46.    Here, Defendant contracted to obtain MVP for an initial term of 60 months with a renewal term of 12 months, at a rate of [*See Complaint*]. As to these services, RingCentral granted a onetime credit in the amount of [*See Complaint*]. Accordingly, as a direct, foreseeable, and proximate result of Defendant's breach of the agreement, Plaintiff has suffered and continues to suffer damages in an amount not less than [*See Complaint*].

**ANSWER:    Defendant asserts that the MVP Agreement speaks for itself. To the extent that a further response is required, Defendant denies the allegations in Paragraph 46.**

47.    Plaintiff is therefore entitled to relief as set forth in the prayer below.

**ANSWER:    Defendant states that the allegations in Paragraph 47 are legal conclusions to which no response is required. To the extent that a further response is required, Defendant denies the remaining allegations in Paragraph 47.**

### THIRD CAUSE OF ACTION

**(Common Count – Services Rendered)**

**Against All Defendants**

48.    Plaintiff repeats and realleges each and every allegation contained in the above paragraphs as though set forth fully herein.

**ANSWER:    Defendant incorporates by references its responses to each preceding paragraph as though fully set forth herein.**

49.    AmeriSave requested, by words or conduct, that RingCentral perform services for the benefit of AmeriSave.

**ANSWER:    Defendant admits the allegations of Paragraph 49.**

50.    RingCentral performed the services as requested.

**ANSWER:    Defendant denies the allegations of Paragraph 50.**

51.    AmeriSave has not paid RingCentral for the services.

**ANSWER:    Defendant admits the allegations in Paragraph 51.**

52.    The reasonable value of the services were provided.

**ANSWER:    Defendant denies the allegations in Paragraph 52.**

53.    "In California, a common count claim for services rendered requires a plaintiff to show (1) that the defendant requested the plaintiff perform services for the defendant's benefit; (2) that plaintiff performed the services as requested; (3) that defendant has not paid for the services; and (4) the reasonable value of the services provided." *County of San Bernardino v. United Health Group Inc.* (C.D. Cal., Jan. 7, 2022, No. EDCV21595JGBKKX) 2022 WL 886448, at *7; *see also Utility Audit Co., Inc. v. City of Los Angeles* (2003) 112 Cal.App.4th 950, 958 ("A common count is proper whenever the plaintiff claims a sum of money due, either as an indebtedness in a sum certain, or for the reasonable value of services, goods, etc., furnished. It makes no difference in such a case that the proof shows the original transaction to be an express contract, a contract implied in fact, or a quasicontract.") "The practice of pleading common counts in California has been too long established to be open to question. (*Pike v. Zadig* (1915) 171 Cal. 273, 276, 152 P. 923). '[T]he common counts are sufficient to state a cause of action upon either a contract implied in fact [citations] or a contract implied in law.'" *Kawasho Internat., U.S.A. Inc. v. Lakewood Pipe Service, Inc.* (1983) 152 Cal.App.3d 785, 793.

**ANSWER:    Defendant states that the allegations in Paragraph 53 are legal conclusions to which no response is required. To the extent that a further response is required, Defendant denies the remaining allegations in Paragraph 53.**

54.    Here, the Parties entered into the into the MSA in April, 2021. Execution of the MSA came after extensive pre-engagement "discovery" meetings with AmeriSave in order to determine the products and services appropriate for AmeriSave's needs. Based on the feedback and discussion between the Parties, AmeriSave requested that RingCentral develop an integrated

BARNES &
THORNBURG LLP
ATTORNEYS AT LAW
LOS ANGELES

49436287.6                                     13
DEFENDANT'S ANSWER TO PLAINTIFF'S COMPLAINT AND COUNTERCLAIM

UCaaS (Unified Communications as a Service) and CCaaS (Contact Center as a Service) platform – Contact Center and MVP.

**ANSWER:    Defendant admits that the Parties engaged in meetings and discussions in which RingCentral made representations to AmeriSave on which AmeriSave relied in deciding to work with RingCentral. As stated, Defendant denies the remaining allegations in Paragraph 54.**

55.    RingCentral performed the services as requested and incurred significant costs in an effort to meet AmeriSave's needs throughout the RingCentral's development of the highly customized UCaaS (Unified Communications as a Service) and CCaaS (Contact Center as a Service) platforms requested by AmeriSave.

**ANSWER:    Defendant denies the allegations in Paragraph 55.**

56.    Notwithstanding RingCentral's performance of the services as requested, AmeriSave has failed to tender payment for the services rendered.

**ANSWER:    As stated, Defendant denies the remaining allegations in Paragraph 56. Defendant further asserts that it has made payments for all services that were materially completed by RingCentral.**

57.    The reasonable value of the services that RingCentral provided to AmeriSave in accordance with AmeriSave's request total no less than [*See Complaint*].

**ANSWER:    Defendant denies the allegations in paragraph 57.**

58.    Plaintiff is therefore entitled to relief as set forth in the prayer below.

**ANSWER:    Defendant states that the allegations in Paragraph 57 are legal conclusions to which no response is required. To the extent that a further response is required, Defendant denies the remaining allegations in Paragraph 57.**

**Defendant denies all factual allegations in the Complaint that are not explicitly admitted above.**

## PRAYER FOR RELIEF

Wherefore, RingCentral prays for judgment as against Defendant as follows:

### On the First and Second Causes of Action:

1.    For compensatory damages in an amount of not less than [*See Complaint*], according to proof at trial;

2.    Other economic and consequential damages in an amount to be determined at trial;

3.    For such other and further relief as the Court may deem to be just and proper.

### On the Third Cause of Action:

1.    For restitution from Defendant in an amount of not less than [*See Complaint*], according to proof at trial;

2.    Other economic and consequential damages in an amount to be determined at trial;

3.    For such other and further relief as the Court may deem to be just and proper.

**ANSWER:**    The allegations contained in the unnumbered paragraph on page 14 of the Complaint, titled "PRAYER FOR RELIEF," represent a prayer for relief to which no response is required.  To the extent a response is required, Defendant denies that Plaintiff is entitled to any relief in this action.

### DEMAND FOR JURY TRIAL

Plaintiff hereby demands trial by jury for all counts, claims, or issues in this action that are triable as a matter of right to a jury.

**ANSWER:**    The allegations contained in the unnumbered paragraph on Page 15 of the Complaint, titled "DEMAND FOR JURY TRIAL," represent a demand to which no response is required. To the extent a response is required, Defendant admits that the Parties are entitled to a trial by jury.

### DEFENSES

By way of further answer, and by way of further defense and affirmative defense, Defendant alleges the below-summarized defenses.  By alleging the matters set forth in these defenses, Defendant does not thereby allege or admit that it has the burden of proof and/or the burden of

persuasion with respect to any of those matters.  Additionally, in asserting the following defenses, Defendant states that, at this time, it has not had an adequate opportunity to complete its investigation and discovery concerning these defenses or whether other defenses may apply to this case.  Defendant retains and reserves the right to amend its answers and file additional defenses based on the facts learned in discovery.

## FIRST DEFENSE

The Complaint and each claim contained therein fails to state a claim upon which relief can be granted.

## SECOND DEFENSE

At all times referred to in the Complaint, Defendant acted justifiably, lawfully, in good faith, with due care, and without fraud, negligence or improper motive, purpose or intent.

## THIRD DEFENSE

Any damage suffered by Plaintiff was caused in whole or in part by its own conduct, including its failure to act reasonably.

## FOURTH DEFENSE

Any damage suffered by Plaintiff RingCentral was caused in whole or in part by its own conduct, including its failure to act perform its obligations under the contracts.

## FIFTH DEFENSE

Plaintiff is barred from recovery of any damages against Defendant as a result of Plaintiff's failure to mitigate any damages it may have sustained or to protect itself from avoidable consequences.

## SIXTH DEFENSE

Plaintiff is barred from recovery against Defendant by the doctrines of waiver and/or estoppel.

## SEVENTH DEFENSE

Plaintiff is barred from recovery against Defendant by the doctrines of laches and/or unclean hands.

16

DEFENDANT'S ANSWER TO PLAINTIFF'S COMPLAINT AND COUNTERCLAIM

BARNES &
THORNBURG LLP
ATTORNEYS AT LAW
LOS ANGELES

## EIGHTH DEFENSE

Plaintiff's claims are barred by its own material breaches of the agreements in issue in this action.

## NINTH DEFENSE

Even if it should ultimately be adjudicated that Defendant is liable to Plaintiff for some amount, such amount must be fully set-off by Plaintiff's own breaches.

## TENTH DEFENSE

Plaintiff's claims are barred, in whole or in part, because Plaintiff made material misrepresentations of fact upon which Defendant reasonably relied in entering the MSA and all subsequent agreements between the Parties.

## ELEVENTH DEFENSE

Defendant has insufficient knowledge or information upon which to form a belief as to whether it may have additional defenses or affirmative defenses that govern the claims asserted. Defendant therefore reserves the right to raise additional defenses as appropriate.

## PRAYER FOR RELIEF

WHEREFORE, Defendant prays for judgment as follows:

1. That Plaintiff takes nothing from Defendant by the Complaint;

2. That the Complaint be dismissed as against Defendant;

3. That judgment be entered in favor of Defendant as to the claims against it;

4. For costs of suit incurred herein; and

5. For such other and further relief as the Court may deem just and proper.

## COUNTERCLAIM

Counterclaim-Plaintiff AmeriSave Mortgage Corporation ("AmeriSave") for its counterclaim against Counterclaim-Defendant RingCentral, Inc. ("RingCentral") alleges and states as follows:

BARNES &
THORNBURG LLP
ATTORNEYS AT LAW
LOS ANGELES

49436287.6

17

DEFENDANT'S ANSWER TO PLAINTIFF'S COMPLAINT AND COUNTERCLAIM

1

## NATURE OF ACTION

2      1.      AmeriSave is a company that primarily does business with consumers via telephone.

3  If its telephones do not work properly, the company simply cannot conduct its business. This

4  dispute involves a critical telephony solution that RingCentral presented to AmeriSave as one that

5  could truly improve its operations. Based on RingCentral's representations that it would, and could,

6  implement such a system within approximately two months, AmeriSave agreed to the Parties'

7  April, 2021 Master Services Agreement (the "MSA"), with a 60-month initial term.

8      2.      However, RingCentral was never able to get the promised system off the ground. In

9  fact, after six months of incomplete and erratic implementation efforts, RingCentral sought another

10  five months to build a brand new telephony system that, at best, could only provide AmeriSave

11  with a purported solution that required wholesale changes to the structure of AmeriSave's business

12  operations. AmeriSave offered RingCentral an opportunity to cure its material breach, but it was

13  unable to do so.

14      3.      RingCentral's representations were the reason AmeriSave entered into an agreement

15  with RingCentral in the first place. But RingCentral was never in a position to deliver on the

16  representations that it made in the key contractual documents and related discussions, and still, to

17  this date, cannot provide a system consistent with what was promised or acceptable to AmeriSave.

18  In fact, RingCentral knew at the time it made the representations that it could not deliver what

19  AmeriSave needed, but intentionally made the false representations anyway in order to secure

20  AmeriSave's business. AmeriSave is owed damages for RingCentral's misrepresentations, and its

21  failure to deliver.

22

## PARTIES

23      4.      Counterclaim-Plaintiff AmeriSave Mortgage Corporation is a direct-to-consumer

24  mortgage lender.   AmeriSave is a Georgia corporation with its principal place of business in

25  Atlanta, Georgia.

26      5.      Counterclaim-Defendant RingCentral, Inc. is a Delaware corporation with its

27  principal place of business in Belmont, California. RingCentral is a provider of cloud

28

BARNES &
THORNBURG LLP
ATTORNEYS AT LAW
LOS ANGELES

49436287.6                                    18
          DEFENDANT'S ANSWER TO PLAINTIFF'S COMPLAINT AND COUNTERCLAIM

communication and collaboration services for businesses.

## JURISDICTION AND VENUE

6.       Pursuant to Section 13.A. of the MSA, the Parties agreed: "Any dispute arising out of or relating to this Agreement shall be governed and construed in accordance with the laws of the State of California, without regard to its choice of law rules and the parties agree to submit to the exclusive jurisdiction of, and venue in, the courts in San Francisco, California."

7.       This action is within the original jurisdiction of this Court by virtue of 28 U.S.C. § 1332. Here, Counterclaim-Defendant is a citizen of the state of California and Counterclaim-Plaintiff is a citizen of the state of Georgia. There exists complete diversity of citizenship between the Parties and the amount in controversy exceeds the jurisdictional minimum of $75,000.00, exclusive of interest and costs.

8.       This Court has jurisdiction over the Counterclaim-Defendant named herein because Counterclaim-Defendant is a citizen of the state of California.

9.       Venue in this district satisfies the requirements of 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to the claims occurred in this district. Moreover, the operative agreement between the Parties expressly requires that any litigation that ensues under the agreement must occur within San Francisco, California. Venue therefore lies in the United States District Court for the Northern District of California pursuant to 28 U.S.C. § 1391(b)(2).

## FACTUAL ALLEGATIONS

10.      AmeriSave is a company that primarily does business with consumers via telephone. If its telephones do not work properly, the company simply cannot conduct its business.

11.      Plaintiff RingCentral is a provider of cloud communication platforms that include message, video, phone, and contact center services.

12.      In March 2021, the Parties entered into discussions regarding whether RingCentral was capable of developing a custom, cloud-based communication platform system for AmeriSave.

13.      RingCentral had provided custom, cloud-based communication platforms for third

parties in the past.

14.     During March 23, 2021 and April 2, 2021 meetings between RingCentral and AmeriSave, RingCentral presented to AmeriSave a demonstration of its solution.

15.     During these demonstrations, RingCentral represented that it could create a custom, cloud-based communication platform system for AmeriSave within two months.

16.     Based on RingCentral's representations that it could create a custom, cloud-based communication platform system for AmeriSave within two months, AmeriSave agreed to enter into the Master Services Agreement with RingCentral.

17.     RingCentral knew at the time that it could not actually deliver the system needed by AmeriSave, but falsely represented that it could do so in order to get AmeriSave's business.

18.     On April 27, 2021, the Parties entered into the MSA.

19.     RingCentral was not able to develop a custom, cloud-based communication platform system for AmeriSave within two months, as it had represented in the Parties' original discussions, and as was outlined in the MSA.

20.     In the first six months following the signing of the MSA, RingCentral's implementation efforts were both erratic and incomplete.

21.     During this six-month timeframe, AmeriSave incurred significant costs—including the costs of third-party consultants—to assist in troubleshooting the erratic and incomplete implementation efforts made by RingCentral.

22.     Indeed, on October 20, 2021, RingCentral's Senior Manager of Professional Services, Stewart Goldfarb, stated that RingCentral "couldn't deliver the calls at a pace necessary to achieve AmeriSave's business objectives," noting that the implementation RingCentral had originally promised was not able to be implemented due to a "fundamental limitation."

23.     RingCentral then offered an alternative proposal—which would still require five additional months of time to implement—that was untenable because it would have forced AmeriSave to entirely change its operating structure.

24.     Because RingCentral was not capable of delivering on its obligations under the

DEFENDANT'S ANSWER TO PLAINTIFF'S COMPLAINT AND COUNTERCLAIM

BARNES &
THORNBURG LLP
ATTORNEYS AT LAW
LOS ANGELES

Parties' MSA, AmeriSave was forced to return to its original telephony system.

25.     AmeriSave spent significant time and resources to ultimately obtain the solution RingCentral had promised in the MSA.

## COUNT I

### Fraudulent Misrepresentation

26.     AmeriSave incorporates by reference the preceding paragraphs of the Counterclaim as though set forth in full in this paragraph.

27.     In March and April 2021, RingCentral represented to AmeriSave that it could create a custom, cloud-based communication platform system for AmeriSave within two months, and noted no fundamental limitations of its product to deliver the services AmeriSave sought.

28.     RingCentral knew that it could not create a custom, cloud-based communication platform system within a two-month timeframe, particularly in light of fundamental limitations in its capabilities of which it was aware of before entering into the MSA, and particularly given its knowledge and experience with creating other custom, cloud-based communication platform systems.

29.     In the alternative, RingCentral made its representation recklessly and without regard for the prior custom, cloud-based communication platform systems it had provided for other customers.

30.     RingCentral intended for AmeriSave to rely on its representations in order for AmeriSave to enter into the MSA. Indeed, RingCentral promised timely delivery of its products and services, knowing it had no capacity to full that promise, to induce AmeriSave to enter into the MSA.

31.     When entering into the MSA, AmeriSave—with no prior experience in the relevant market—relied heavily on RingCentral's expertise and assurances about its ability to create a custom, cloud-based communication platform system within two months.

32.     AmeriSave was damaged by entering into the MSA. AmeriSave never received a custom, cloud-based communication platform system from RingCentral, was forced to expend time

Barnes &
Thornburg LLP
Attorneys At Law
Los Angeles

and resources to help implement a system that would never work, and ultimately had to pay for a different third-party to create a custom, cloud-based communication platform system.

33.     But for RingCentral's misrepresentations about its ability to create a custom, cloud-based communication platform system within two months, RingCentral would not have entered into the MSA, and therefore would not have been harmed.

34.     For its fraudulent misrepresentation claim against RingCentral, AmeriSave is entitled to its compensatory damages, consequential damages, punitive damages, and attorney fees.

## COUNT II

### Negligent Misrepresentation

35.     AmeriSave incorporates by reference the preceding paragraphs of the Counterclaim as though set forth in full in this paragraph.

36.     In March and April 2021, RingCentral represented to AmeriSave that it could create a custom, cloud-based communication platform system for AmeriSave within two months, and noted no fundamental limitations of its product to deliver the services AmeriSave sought.

37.     RingCentral had no reason to believe that it could not create a custom, cloud-based communication platform system within a two-month timeframe, particularly in light of fundamental limitations in its capabilities of which it was aware of before entering into the MSA, and also given its knowledge and experience with creating other custom, cloud-based communication platform systems.

38.     RingCentral intended for AmeriSave to rely on its representations in order for AmeriSave to enter into the MSA. Indeed, RingCentral promised timely delivery of its products and services, knowing it had no capacity to full that promise, to induce AmeriSave to enter into the MSA.

39.     When entering into the MSA, AmeriSave—with no prior experience in the relevant market—relied heavily on RingCentral's expertise and assurances about its ability to create a custom, cloud-based communication platform system within two months.

40.     AmeriSave was damaged by entering into the MSA. AmeriSave never received a

BARNES &
THORNBURG LLP
ATTORNEYS AT LAW
LOS ANGELES

49436287.6

22

DEFENDANT'S ANSWER TO PLAINTIFF'S COMPLAINT AND COUNTERCLAIM

custom, cloud-based communication platform system from RingCentral, was forced to expend time and resources to help implement a system that would never work, and ultimately had to pay for a different third-party to create a custom, cloud-based communication platform system.

41.    But for RingCentral's misrepresentations about its ability to create a custom, cloud-based communication platform system within two months, RingCentral would not have entered into the MSA, and therefore would not have been harmed.

42.    For its negligent misrepresentation claim against RingCentral, AmeriSave is entitled to its compensatory damages, consequential damages, punitive damages, and attorney fees.

## COUNT III

### Fraud in the Inducement

43.    AmeriSave incorporates by reference the preceding paragraphs of the Counterclaim as though set forth in full in this paragraph.

44.    In March and April, RingCentral represented to AmeriSave that it could create a custom, cloud-based communication platform system for AmeriSave within two months, and noted no fundamental limitations of its product to deliver the services AmeriSave sought.

45.    RingCentral knew that it could not create a custom, cloud-based communication platform system within a two-month timeframe, particularly in light of fundamental limitations in its capabilities of which it was aware of before entering into the MSA, and particularly given its knowledge and experience with creating other custom, cloud-based communication platform systems.

46.    RingCentral intended for AmeriSave to rely on its representations in order for AmeriSave to enter into the MSA. Indeed, RingCentral promised timely delivery of its products and services, knowing it had no capacity to full that promise, to induce AmeriSave to enter into the MSA.

47.    When entering into the MSA, AmeriSave—with no prior experience in the relevant market—relied heavily on RingCentral's expertise and assurances about its ability to create a custom, cloud-based communication platform system within two months.

BARNES &
THORNBURG LLP
ATTORNEYS AT LAW
LOS ANGELES

48.    But for RingCentral's misrepresentations about its ability to create a custom, cloud-based communication platform system within two months, RingCentral would not have entered into the MSA, and therefore would not have been harmed.

49.    For its fraud in the inducement claim against RingCentral, AmeriSave is entitled to its compensatory damages, consequential damages, punitive damages, and attorney fees.

## PRAYER FOR RELIEF

WHEREFORE, AmeriSave prays for judgment as against RingCentral as follows:

1.    For compensatory damages according to proof at trial;

2.    For other economic and consequential damages in an amount to be determined at trial;

3.    For prejudgment interest as allowed by law;

3.    For attorneys' fees and costs as allowed by law;

4.    For such other and further relief as the Court may deem to be just and proper.

## JURY DEMAND

AmeriSave demands a trial by jury.

Dated: November 4, 2025              **BARNES & THORNBURG LLP**

                                     By: _____
                                         Eric S. Fisher
                                         Attorney for Defendant
                                         AMERISAVE MORTGAGE
                                         CORPORATION

Barnes &
Thornburg LLP
Attorneys At Law
Los Angeles

49436287.6                                    24
                    DEFENDANT'S ANSWER TO PLAINTIFF'S COMPLAINT AND COUNTERCLAIM

## **CERTIFICATE OF SERVICE**

I hereby certify that on November 4, 2025, I caused to be served a copy of the foregoing document on all counsel of record via the Court's CM/ECF system.

Dated: November 4, 2025                    **BARNES & THORNBURG LLP**

By _____
Eric S. Fisher
Attorney for Defendant AMERISAVE
MORTGAGE CORPORATION

Barnes &
Thornburg LLP
Attorneys At Law
Los Angeles