UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

RINGCENTRAL, INC.,

Plaintiff,

v.

AMERISAVE MORTGAGE
CORPORATION,

Defendant.

Case No.  25-cv-08694-WHO

**ORDER RESOLVING PLAINTIFF'S MOTION TO DISMISS AND MOTION TO STRIKE DEFENDANT'S COUNTERCLAIM**

Re: Dkt. Nos. 39, 40, 41, 42, 44, 45, 46, 48, 49, 50

Plaintiff RingCentral, Inc. ("RingCentral") moves to dismiss defendant AmeriSave Mortgage Corporation's ("AmeriSave") amended counterclaim as barred by the claims' statute of limitations and as inadequately pleaded under Federal Rules of Civil Procedure 9(b) and 12(b)(6). It also moves to strike various portions of AmeriSave's counterclaim, including its request for punitive damages and attorneys' fees, as well as references to mediation proceedings and RingCentral's "pattern" of misconduct towards customers.  AmeriSave has failed to adequately plead its claims under both Rules 9(b) and 12(b)(6), except for its breach of contract claim. Accordingly, I GRANT RingCentral's motion to dismiss, with leave to amend.  RingCentral's motion to strike is DENIED; its requests are both premature and speculative.

**BACKGROUND**

### 1.  Factual Background

AmeriSave is a "direct-to-consumer mortgage lender" who "primarily does business with consumers via telephone."  Defendant's Amended Counterclaim ("AC") [Dkt. No. 39] at ¶¶ 4, 10. In its view, if "its telephones do not work properly, [AmeriSave] simply cannot conduct its business."  *Id.* ¶ 10.

RingCentral is a "provider of cloud communication platforms that include message, video, phone, and contact center services." *Id.* ¶ 11. Beginning in March 2021, RingCentral and AmeriSave "entered into discussions regarding whether RingCentral was capable of developing a custom, cloud-based communication platform system for AmeriSave," as it had done for similar third parties in the past. *Id.* ¶¶ 12–13. On March 23, 2021, and April 2, 2021, the parties met, and RingCentral "presented to AmeriSave a demonstration of its solution." *Id.* ¶ 14. During these demonstrations, "RingCentral, through its executives, represented that it could create a custom, cloud-based communication platform system for AmeriSave that would resolve call quality and scalability issues." *Id.* ¶ 16. Based on these representations, AmeriSave entered into a Master Services Agreement ("MSA") with RingCentral on April 27, 2021. *Id.* ¶¶ 17, 19.

In the six months following the signing of the MSA, AmeriSave describes RingCentral's "implementation efforts [as] both erratic and incomplete." *Id.* ¶ 21. This resulted in AmeriSave incurring "significant costs—including the costs of third-party consultants—to assist in troubleshooting the erratic and incomplete implementation efforts." *Id.* ¶ 22. Aware of AmeriSave's growing frustrations, RingCentral executive Paul Buday "offered to delay charges on related invoices until the product was live." *Id.* ¶ 23. Later, on October 20, 2021, Stewart Goldfarb, RingCentral's Senior Manager of Professional Services, notified AmeriSave that it "couldn't deliver the calls at a pace necessary to achieve AmeriSave's business objectives," and that RingCentral was not able to implement its original plans due to a "fundamental limitation." *Id.* ¶¶ 24–25. RingCentral instead offered an alternative proposal—one that would require five additional months—that AmeriSave found "untenable," as it "would have forced [it] to entirely change its operating structure." *Id.* ¶ 25.

Recognizing the "untenability" of this proposal, "Goldfarb, with the approval of other RingCentral executives, offered a separate proposal to deploy the completed portion of the system in a phased approach as originally planned, purportedly working to address timeline acceleration and to provide answers to AmeriSave." *Id.* ¶ 26. By November 2021, RingCentral executives "continued to lull AmeriSave's concerns by stating that it was still working on solutions and recommendations to accommodate AmeriSave's needs." *Id.* ¶ 27.

2

In December 2021, AmeriSave sent a letter to RingCentral, expressing concerns with its performance. *Id.* ¶ 28.  RingCentral's Senior Vice President of Legal, Jose Serrano, responded, indicating that "RingCentral and its senior executives were committed to delivering a system to AmeriSave and working toward an amicable resolution for the Parties." *Id.*  During that conversation, however, Serrano "misrepresented that the agreed-upon system had been delivered by RingCentral and that all payments—regardless of RingCentral's performance—were due." *Id.* ¶ 29.

AmeriSave alleges that these false representations of "progress" continued through March 2022, several months after AmeriSave's termination of the MSA in January 2022. *Id.* ¶ 31.  It was not until April 2023—while preparing for mediation—that AmeriSave alleges that it first "identified information demonstrating that RingCentral had a history of making false representations to customers to induce them into contracts which RingCentral could not carry out, thereby forcing clients to pay for services that were never rendered." *Id.*  Prior to this discovery, "AmeriSave believed RingCentral's failure to implement the system was attributable solely to delays, technical difficulties, or incompetence, and had no reason to suspect that RingCentral had wrongfully induced AmeriSave into the MSA." *Id.* ¶ 32.

Because of these alleged misrepresentations, AmeriSave was "forced to return to its original telephony system," and "spent significant time and resources to ultimately obtain the solution RingCentral had promised in the MSA." *Id.* ¶¶ 33–34.

## 2.  Procedural History

On October 9, 2025, RingCentral filed suit against AmeriSave, alleging a breach of the parties' written contract.  Complaint [Dkt. No. 1].  Later, on November 4, 2025, AmeriSave filed its answer to the complaint, along with its counterclaim against RingCentral.  Counterclaim [Dkt. No. 15].  On January 7, 2026, I dismissed AmeriSave's counterclaim with leave to amend, finding that the counterclaim failed to establish that the delayed discovery rule applied, and that the claims lacked sufficient factual support to survive Rule 9(b).  *See* Minute Entry for Proceedings on January 7, 2026 [Dkt. No. 34].

On January 27, 2026, AmeriSave filed an amended counterclaim (the "AC").  *See* Answer

3

to Complaint and Counterclaim [Dkt. No. 39]. On February 10, 2026, RingCentral filed both a motion to dismiss the counterclaim, *see* Motion to Dismiss Counterclaim ("Dismiss Mot.") [Dkt. No. 40], and a motion to strike, *see* Motion to Strike Answer to Complaint ("Strike Mot.") [Dkt. No. 42]. AmeriSave responded to both motions on February 24, 2026. *See* Response in Opposition to Motion to Strike ("Strike Oppo.") [Dkt. No. 44]; Response in Opposition to Motion to Dismiss ("Dismiss Oppo.") [Dkt. No. 45]. RingCentral replied on March 3, 2026. *See* Reply in Support of Motion to Dismiss ("Dismiss Repl.") [Dkt. No. 48]; Reply in Support of Motion to Strike ("Strike Repl.") [Dkt. No. 49]. I heard oral argument on March 25, 2026.

## LEGAL STANDARD

**Motion to Dismiss**

### 1. Rule 12(b)(6)

Under Federal Rule of Civil Procedure 12(b)(6), a district court must dismiss a complaint if it fails to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). To survive a Rule 12(b)(6) motion to dismiss, the plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is facially plausible when the plaintiff pleads facts that "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted). There must be "more than a sheer possibility that a defendant has acted unlawfully." *Id.* While courts do not require "heightened fact pleading of specifics," a plaintiff must allege facts sufficient to "raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555, 570.

In deciding whether the plaintiff has stated a claim upon which relief can be granted, the Court accepts the plaintiffs' allegations as true and "draw[s] all reasonable inferences in favor of the nonmoving party." *Usher v. City of Los Angeles*, 828 F.2d 556, 561 (9th Cir. 1987). But the court is not required to accept as true "allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *In re Gilead Scis. Sec. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008) (quoting *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001), *amended on other grounds*, 275 F.3d 1187 (9th Cir. 2001)).

United States District Court
Northern District of California

4

If the court dismisses the complaint, it "should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts." *Doe v. United States*, 58 F.3d 494, 497 (9th Cir. 1995).  In making this determination, the court should consider factors such as "the presence or absence of undue delay, bad faith, dilatory motive, repeated failure to cure deficiencies by previous amendments, undue prejudice to the opposing party and futility of the proposed amendment." *Moore v. Kayport Package Express, Inc.*, 885 F.2d 531, 538 (9th Cir. 1989).

### 2.  Rule 9(b)

Federal Rule of Civil Procedure 9(b) imposes a heightened pleading standard where a complaint alleges fraud or mistake.  Under Rule 9(b), to state a claim for fraud, "a party must state with particularity the circumstances constituting fraud," and the allegations must be "specific enough to give defendants notice of the particular misconduct . . . so that they can defend against the charge and not just deny that they have done anything wrong." *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1124 (9th Cir. 2009) (citations omitted).  "Averments of fraud must be accompanied by 'the who, what, when, where, and how' of the misconduct charged." *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1106 (9th Cir. 2003) (citation omitted).  But "Rule 9(b) requires only that the circumstances of fraud be stated with particularity; other facts may be plead[ed] generally, or in accordance with Rule 8." *United States ex rel. Lee v. Corinthian Colls.*, 655 F.3d 984, 992 (9th Cir. 2011) (emphasis omitted).

### Motion to Strike

Federal Rule of Civil Procedure 12(f) allows the court to strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter.  Fed. R. Civ. P. 12(f).  "The function of a 12(f) motion to strike is to avoid the expenditure of time and money that must arise from litigating spurious issues by dispensing with those issues prior to trial." *Whittlestone, Inc. v. Handi-Craft Co.*, 618 F.3d 970, 973 (9th Cir. 2010) (citation and alteration omitted).  Motions to strike "are generally disfavored because the motions may be used as delaying tactics and because of the strong policy favoring resolution on the merits." *Barnes v. AT & T Pension Ben. Plan-Nonbargained Program*, 718 F. Supp. 2d 1167, 1170 (N.D. Cal. 2010)

(Patel, J.) (citation omitted). Such motions should only be granted if "the matter has no logical connection to the controversy at issue and may prejudice one or more of the parties to the suit." *N.Y.C. Emps. Ret. Sys. v. Berry*, 667 F. Supp. 2d 1121, 1128 (N.D. Cal. 2009) (Ware, J.) (citation omitted). "Where the moving party cannot adequately demonstrate such prejudice, courts frequently deny motions to strike even though the offending matter literally was within one or more of the categories set forth in Rule 12(f)." *Id.* (citation and quotation marks omitted). "Ultimately, whether to grant a motion to strike lies within the sound discretion of the district court." *Cruz v. Bank of New York Mellon*, No. 12-cv-00846-LHK, 2012 WL 2838957, at *2 (N.D. Cal. July 10, 2012) (Koh, J.) (citing *Whittlestone*, 618 F.3d at 973).

## DISCUSSION

### I.    Motion to Dismiss

#### A.    Rule 15

Federal Rule of Civil Procedure 15 provides the rules for amending complaints, including when amendment is allowed "as a matter of course" or with the court's approval. Fed. R. Civ. P. 15(a). "Once the plaintiff elects to file an amended complaint, the new complaint is the only operative complaint before the district court." *Askins v. U.S. Dep't of Homeland Sec.*, 899 F.3d 1035, 1043 (9th Cir. 2018).

RingCentral argues that the AC is barred under Rule 15 as it contains "impermissible contradiction[s]" compared to the original complaint. *See* Mot. at 3–4. Unlike the original complaint, which focused only on the fact that "RingCentral disclosed the alleged 'fundamental limitation' on October 20, 2021," the AC now alleges that AmeriSave discovered the allegedly fraudulent conduct in 2023. *Id.*; *see* AC ¶ 24. Since it believes October 20, 2021, is the correct date for determining the relevant statute of limitations, RingCentral concludes that the AC "contradicts [AmeriSave's] earlier factual theory to avoid dismissal." *Id.* at 4.

Rule 15 notably does not contain any provision prohibiting later-filed complaints from containing "contradictory" statements. Indeed, as the Ninth Circuit has indicated, "[o]nce the plaintiff elects to file an amended complaint, the new complaint is the only operative complaint before the district court." *Askins*, 899 F.3d at 1043. While RingCentral may certainly attack

AmeriSave's theory for why its AC meets the statute of limitations, AmeriSave did not violate Rule 15 by merely providing new facts that Ring Central views as "contradictory." I decline to dismiss the AC under Rule 15.

### B.      Statute of Limitations

#### 1.      Counts One, Two, and Three – Fraud Claims

Under California law, fraudulent misrepresentation, fraud in the inducement, and non-professional negligent misrepresentation claims are subject to a three-year statute of limitations, *see* CAL. CIV. PROC. CODE § 338(d), whereas negligent misrepresentation claims made by professionals are subject to a two-year statute of limitations, *see id.* § 339(1). While the parties disagree as to when the statute of limitations tolled in this case, both agree that the sufficiency of the AC depends on whether the delayed discovery rule can be invoked.

To invoke the delayed discovery rule, the pleading party "must specifically plead facts to show (1) the time and manner of discovery and (2) the inability to have made earlier discovery despite reasonable diligence." *Fox v. Ethicon Endo-Surgery, Inc.*, 35 Cal. 4th 797, 808 (2005) (cleaned up). "In assessing the sufficiency of the allegations of delayed discovery, the court places the burden on the plaintiff to show diligence; conclusory allegations will not withstand" a motion to dismiss. *See id.* (internal quotations omitted). But the delayed discovery rule "only delays accrual until the plaintiff has, or should have, inquiry notice of the cause of action." *Id.* at 807. A plaintiff has inquiry notice "when [she] suspects or should suspect that her injury was caused by *wrongdoing*, that someone has done something wrong to her." *Jolly v. Eli Lilly & Co.*, 44 Cal. 3d 1103, 1110 (1988) (emphasis added). "[P]laintiffs are required to conduct a reasonable investigation after becoming aware of an injury, and are charged with knowledge of the information that would have been revealed by such an investigation." *Fox*, 35 Cal. 4th at 808. "The question when a plaintiff actually discovered or reasonably should have discovered the facts for purposes of the delayed discovery rule is a question of fact unless the evidence can support only one reasonable conclusion." *Ovando v. Cnty. of L.A.*, 159 Cal. App. 4th 42, 61 (2008).

RingCentral argues that AmeriSave discovered the purported fraud on October 20, 2021, when "RingCentral's Senior Manager of Professional Services, Stewart Goldfarb, stated that

7

RingCentral 'couldn't deliver the calls at a pace necessary to achieve AmeriSave's business objectives,' noting that the implementation RingCentral had originally promised was not able to be implemented due to a 'fundamental limitation.'" AC ¶ 24; *see* Mot. at 4–7. AmeriSave, in response, asserts that the AC raises additional facts showing that the delayed discovery rule applies. *See* Oppo. at 6–8. It points out that the AC alleges the parties were in communication for months after discovering the "fundamental limitation," as RingCentral's "senior executives [expressed a] commit[ment] to delivering a system to AmeriSave and working toward an amicable resolution for the Parties." AC ¶ 28. RingCentral then "continued to falsely represent that progress was being made on the system through March 2022, several months after AmeriSave's termination of the MSA in January 2022." *Id.* ¶ 30. It was not until 2023, when preparing for mediation, that AmeriSave "identified information demonstrating that RingCentral had a history of making false representations to customers to induce them into contracts which RingCentral could not carry out, thereby forcing clients to pay for services that were never rendered." *Id.* ¶ 31. The AC then concludes by noting that "[p]rior to discovering this information in 2023, AmeriSave believed RingCentral's failure to implement the system was attributable solely to delays, technical difficulties, or incompetence, and had no reason to suspect that RingCentral had wrongfully induced AmeriSave into the MSA." *Id.* ¶ 32.

AmeriSave has not pleaded that its fraud-based claims can survive under the delayed discovery rule. Notably, AmeriSave concedes that it discovered the "fundamental limitation"— that RingCentral could not deliver its system—on October 20, 2021, when Goldfarb indicated it could not meet its contractual promises. AC ¶ 24. A plaintiff may be placed on "inquiry notice" of its fraud claims when they "bec[o]me aware" of their injury. *See Platt Elec. Supply, Inc. v. EOFF Elec., Inc.*, 522 F.3d 1049, 1055 (9th Cir. 2008) (finding plaintiff was on inquiry notice upon learning defects in 1999, despite claiming later discovery of wrongdoing in 2001). Without more facts, it appears that AmeriSave "should have been suspicious" that RingCentral negligently or fraudulently represented its capacity to deliver a functional system as soon as October 20, 2021, when RingCentral acknowledged its "fundamental limitation." *See id.*; AC ¶ 24. As AmeriSave expressly concedes in its complaint, if "its telephones do not work properly, [it] simply cannot

United States District Court
Northern District of California

conduct its business." AC ¶ 10. Given the "extensive [potential] legal and economic repercussions" produced by the "fundamental limitation," AmeriSave had "reason to at least suspect that a type of wrongdoing ha[d] injured [it]." *Id.* ¶ 24; *Platt*, 522 F.3d at 1055–56 (quoting *V.C. v. L.A. Unified Sch. Dist.*, 139 Cal. App. 4th 499, 516 (2006)). Because "it is the discovery of *facts*, not their legal significance, that starts the statute," AmeriSave cannot rely on its findings during mediation preparation in 2023 to revive its fraud-based claims. *Jolly*, 44 Cal. 3d at 1113 (citation omitted, emphasis added). RingCentral's motion to dismiss AmeriSave's fraud claims as tolled by the statute of limitations is GRANTED.

### 2. Contract Claims

Breach of contract claims under California law are subject to a four-year statute of limitations for written contracts, *see* CAL. CIV. PROC. CODE § 337, and two years for oral contracts, *see id.* at 339(1), while promissory estoppel claims are subject to a two-year statute of limitations, *see id.*[1] Both parties agree that the statute of limitations for a contract claim accrues at the time of breach. *See McCaskey v. Cal. State Auto. Ass'n*, 189 Cal. App. 4th 947, 959 (2010). But a breach must be "actually discharged" for the statute of limitations to begin running. *See id.*

RingCentral argues that the purported breach of contract occurred when AmeriSave learned of the "fundamental limitation" affecting its ability to effectuate the MSA. *See* Mot. at 4–7; AC ¶ 24. AmeriSave, in turn, asserts that the breach did not occur until January 31, 2022, when AmeriSave repudiated the contract. *See* Oppo. at 9; AC ¶ 30. AmeriSave has the stronger argument at this stage of litigation. While the AC identifies the October 20, 2021 "fundamental limitation" conversation as constituting a "material breach," *see* AC ¶ 2, it also indicates that the breach of contract was "actually discharged" on January 31, 2022, when "AmeriSave . . . terminat[ed] the MSA," *see id.* ¶ 30; *McCaskey*, 189 Cal. App. 4th at 959. Construing the breach

---

[1] AmeriSave's breach of contract claim concerns alleged violations of the parties' MSA. *See* AC ¶¶ 68–73. While the AC does not indicate whether the MSA was an oral or written contract, RingCentral's request for judicial notice confirms that the agreement was written. *See* Request for Judicial Notice ("RJN") [Dkt. No. 41] Ex. A Master Services Agreement ("MSA"). Accordingly, AmeriSave's breach of contract claim is subject to a four-year statute of limitations. CAL. CIV. PROC. CODE § 339(1).

to occur in January 2022, therefore, AmeriSave's breach of contract claim, filed on October 9, 2025, is within the four-year statute of limitations.  But the promissory estoppel claim, with only a two-year statute of limitations, is untimely.  I accordingly GRANT RingCentral's motion to dismiss the promissory estoppel claim but DENY it as to the breach of contract claim.

### C.    Failure to State a Claim – Rules 9(b) and 12(b)(6)

#### 1.    Counts One and Three – Fraudulent Misrepresentation and Negligent Misrepresentation

Both the first and second count of AmeriSave's AC sound in fraud.  "The elements of fraudulent misrepresentation are the same as the elements for a fraud claim."  *Bankers Life & Cas. Co. v. Mallin*, 808 F. Supp. 3d 1062, 1076 (N.D. Cal. 2025) (Lin, J.) (citing *Yamauchi v. Cotterman*, 84 F. Supp. 3d 993, 1018 (N.D. Cal. 2015)).

To state a claim for fraudulent misrepresentation, a plaintiff must show "(1) a misrepresentation or omission of a fact that should have been disclosed; (2) knowledge of falsity; (3) intent to induce reliance; (4) justifiable reliance; and (5) resulting damage."  *Id.*; *see Lazar v. Superior Court*, 12 Cal. 4th 631, 638 (1996).  Under Federal Rule of Civil Procedure 9(b), "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake."  Fed. R. Civ. P. 9(b).  In other words, to plausibly allege a claim for fraudulent misrepresentation, AmeriSave must establish "the who, what, when, where, and how" of the misconduct charged.  *Vess*, 317 F.3d at 1106.

Similarly, to establish a claim for negligent misrepresentation, a plaintiff must show that the defendant "(1) made a misrepresentation of a past or existing material fact, (2) without reasonable ground for believing it to be true, (3) with intent to induce another's reliance on the fact misrepresented, (4) justifiable reliance on the misrepresentation, and (5) resulting damage."  *Maeda v. Pinnacle Foods Inc.*, 390 F. Supp. 3d 1231, 1257 (D. Haw. 2019) (collecting cases).  While the Ninth Circuit has "not yet decided whether Rule 9(b)'s pleading standard applies to a claim for negligent misrepresentation, . . . most district courts in California hold that it does."  *Villegas v. Wells Fargo Bank, N.A.*, No. 12-cv-02004 LB, 2012 WL 4097747, at *7 (N.D. Cal. Sept. 17, 2012) (Beeler, M.J.).  AmeriSave does not appear to argue that it must only meet the

United States District Court
Northern District of California

Rule 8 pleading standard for purposes of resolving the present motion. I therefore assume Rule 9(b) applies to AmeriSave's negligent misrepresentation claim.

RingCentral argues that AmeriSave failed to adequately plead either of its fraud claims, as the AC "does not identify the precise statements, by which speaker, on what date(s), in what medium, nor facts showing contemporaneous falsity or scienter." Mot. at 10. I agree. The AC alleges that during two meetings between RingCentral and AmeriSave on March 23, 2021, and April 2, 2021, "RingCentral, through its executives, represented that it could create a custom, cloud-based communication platform system for AmeriSave that would resolve [its] call quality and scalability issues." AC ¶¶ 14, 16. Despite this, RingCentral was unable to complete the platform and instead "attempt[ed] to conceal [its] inability to implement the agreed-upon system." *Id.* ¶¶ 20, 23. AmeriSave then alleges numerous instances between October 2021 and March 2022 where RingCentral "falsely represent[ed] that progress was being made on the system." *See id.* ¶¶ 24–30. But it was not until "early 2023, during AmeriSave's preparations for an April 2023 mediation and its aftermath, [that] it identified information demonstrating that RingCentral had a history of making false representations to customers to induce them into contracts which RingCentral could not carry out, thereby forcing clients to pay for services that were never rendered." *Id.* ¶ 31.

These facts, taken together, are not sufficient to establish the "who, what, when, where, and how" of RingCentral's purportedly fraudulent misconduct. *Vess*, 317 F.3d at 1106. Importantly, the AC does not identify with particularity what "information demonstrate[d] . . . RingCentral had a history of making false representations" when preparing for its April 2023 mediation. AC ¶ 31. Nor does AmeriSave explain what such "false representations" were made in those other contracts. *See id.* Its "barebone assertions do not satisfy the heightened pleading requirements of Rule 9(b)." *Zearfoss v. Rubbermaid, Inc.*, No. 2:18-cv-06392-AB (ASx), 2018 WL 8731935, at *3 (C.D. Cal. Dec. 21, 2018).

### 2.      Counts Four and Five – Breach of Contract and Promissory Estoppel

RingCentral also moves to dismiss AmeriSave's breach of contract and promissory estoppel claims under Rule 12(b)(6). Under California law, to plead a breach of contract claim, a

11

party must allege four elements: "[1] that a contract exists between the parties, [2] that the plaintiff performed his contractual duties or was excused from nonperformance, [3] that the defendant breached those contractual duties, and [4] that plaintiff's damages were a result of the breach." *Boland, Inc. v. Rolf C. Hagen (USA) Corp.*, 685 F. Supp. 2d 1094, 1101 (E.D. Cal. 2010) (citing *Reichert v. Gen. Ins. Co.*, 68 Cal. 2d 822, 830 (1968)).  Similarly, for promissory estoppel claims, a plaintiff must allege "(1) a promise clear and unambiguous in its terms; (2) reliance by the party to whom the promise is made; (3) the reliance must be both reasonable and foreseeable; and (4) the party asserting the estoppel must be injured by his reliance." *Granadino v. Wells Fargo Bank, N.A.*, 236 Cal. App. 4th 411, 416 (2015) (cleaned up).

With respect to AmeriSave's breach of contract claim, RingCentral maintains that the AC "does not allege that [it] failed to perform any concrete, promised obligation under the integrated MSA (including Attachments and Order Forms), as opposed to failing to meet evolving, extra-contractual preferences." Mot. at 11.  I disagree.  AmeriSave need not "allege the specific terms of the contract" under Rule 8, so long as "adequate specific facts" are provided to allege breach of contract. *Westway World Travel v. AMR Corp.*, 182 F. Supp. 2d 952, 963 (C.D. Cal. 2001).  That is met here.  As AmeriSave notes in its Opposition, the AC "alleges the existence of the MSA and attached agreements; alleges that AmeriSave was excused from performance of its obligations due to RingCentral's failure to implement the system; alleges that RingCentral promised to implement a custom, cloud-based telephony system and failed to do so; and alleges damages resulting from that failure." Oppo. at 13; *see* AC ¶¶ 19–22, 34, 68–73.  Because AmeriSave establishes each element of a breach of contract claim with sufficient particularity, I decline to dismiss this claim.[2]

---

[2] Because I find AmeriSave's promissory estoppel claim barred by the statute of limitations, I decline to address RingCentral's argument that the promissory estoppel claim must be dismissed because "promissory estoppel claims are generally unavailable where the parties have entered into a contract supported by consideration." Mot. at 12.  Even so, I will note that to dismiss the promissory estoppel claim on these grounds would be a merits judgment.  AmeriSave may allege a duplicative breach of contract and promissory estoppel claim in its complaint. *See* Fed. R. Civ. P. 8(d)(3) (allowing "[a] party [to] state as many separate claims or defenses as it has, regardless of consistency"); *Herbalife Int'l of Am., Inc. v. E. Computer Exch., Inc.*, 723 F. Supp. 3d 888, 911 (C.D. Cal. 2024) (indicating that promissory is an alternative claim to a breach of contract).

United States District Court
Northern District of California

### D.    Economic Loss Rule

RingCentral also argues that the economic loss rule provides an independent basis for dismissal.  "The economic loss rule limits a party to a contract 'to recover[ing] in contract for purely economic loss due to disappointed expectations,' rather than in tort, 'unless he can demonstrate harm above and beyond a broken contractual promise.'"  *Rattagan v. Uber Techs., Inc.*, 19 F.4th 1188, 1191 (9th Cir. 2021) (quoting *Robinson Helicopter Co. v. Dana Corp.*, 34 Cal. 4th 979, 988 (2004)).  "Stated differently, a party to a contract generally cannot recover for pure economic loss—*i.e.*, damages that are solely monetary—that resulted from a breach of contract unless he can show a violation of some independent duty arising in tort."  *Id.*  This rule is meant to "prevent[] the law of contract and the law of tort from dissolving one into the other."  *Robinson*, 34 Cal. 4th at 988 (internal quotation omitted).

RingCentral maintains that the AC alleges damages that are "purely economic and . . . arise solely from disappointed contractual expectation."  Mot. at 12.  Because AmeriSave purportedly "alleges no injury independent of disappointed performance, all tort claims are barred" by the economic loss rule.  *Id.*  While AmeriSave acknowledges the economic loss rule, it believes the rule "does not apply where the defendant's conduct violates an independent tort duty."  Oppo. at 14; *see Robinson Helicopter*, 34 Cal. 4th at 998; *Erlich v. Menezes*, 21 Cal. 4th 543, 554 (1999).  Because the AC "alleges that RingCentral made affirmative, materially false statements and concealed critical limitations before and after execution of the MSA, inducing AmeriSave to enter into and continue performing under the MSA," AmeriSave concludes that an independent tort of fraud is actionable.  Oppo. at 15.

To support its argument, AmeriSave cites to many cases it believes show that California courts allow tort recovery for these types of intentional misconduct.  *Id.* at 14–15 (citing *Robinson Helicopter*, 34 Cal. 4th at 991–92); *Lou v. Am. Honda Motor Co.*, No. 16-cv-04384-JST, 2022 WL 18539358, at *3 (N.D. Cal. Aug. 26, 2022) (Tigar, J.); *Weisberg v. Takeda Pharm. Co. Ltd.*, No. CV 18-784 PA (JCx), 2018 WL 6219879, at *5 (C.D. Cal. May 7, 2018)).  In each of those cases, the courts found intentional misrepresentations rooted *outside* the scope of the contract, such as false certificates of conformance about a product's safety standards.  *See Robinson Helicopter*, 34

13

Cal. 4th at 991–92.

AmeriSave's fraud claims appear to saddle the line between tort and contract. But construing all facts in favor of the nonmoving party, AmeriSave meets its burden to survive the economic loss rule. The AC alleges that RingCentral "knew [in March and April 2021] that it could not create a custom, cloud-based communication platform system, particularly in light of fundamental limitations in its capabilities of which it was aware of before entering into the MSA." AC ¶ 38. Nonetheless, RingCentral "promised timely delivery of its products and services, knowing it had no capacity to fulfill that promise, to induce AmeriSave to enter into the MSA." *Id.* ¶ 41. AmeriSave, "with no prior experience in the relevant market," ultimately relied on RingCentral's "expertise and assurances." *Id.* ¶¶ 37, 42. While the parties memorialized their ultimate agreement via contract, the underlying claim at issue here—RingCentral's prior claims that it could fulfill the contract, despite its knowledge otherwise—sound in tort. RingCentral's motion to dismiss on the economic loss rule is accordingly DENIED.

### E.     Integration Clause

Finally, RingCentral contends that the MSA's integration clause bars any extra-contractual arguments made by AmeriSave. *See* Mot. at 13–15. The MSA contains an express integration clause that reads:

> **J. Entire Agreement.** The Agreement, together with any exhibits, Order Forms, Use Policies, Data Processing Addendum and Attachments, each of which is expressly incorporated into this Agreement with this reference, constitutes the entire agreement between the Parties and supersedes and replaces any and all prior or contemporaneous understandings, proposals, representations, marketing materials, statements, or agreements, whether oral, written, or otherwise, regarding such subject.

RJN MSA. RingCentral argues that the AC rests "entirely on pre-contract sales demonstrations, capability pitches, and timing assurances – the precise 'representations' and 'marketing materials' the integration clause excludes." Mot. at 13. In its view, therefore, the integration clause provides an additional basis for dismissal. *See id.*

RingCentral is mistaken. Under Section 1856(g) of the California Civil Code, the parole evidence rule "does not exclude other evidence of the circumstances under which the agreement

United States District Court
Northern District of California

United States District Court
Northern District of California

was made or to which it relates . . . or to explain an extrinsic ambiguity or otherwise interpret the terms of the agreement, *or to establish illegality or fraud*." CAL. CIV. PROC. CODE § 1856(g) (emphasis added). In other words, California law explicitly permits parties to introduce extrinsic evidence to prove fraud, notwithstanding any integration or merger clauses in the parties' contracts. While the AC's fraud claims are currently deficient, the integration clause alone does not provide an independent basis for dismissal. RingCentral's motion to dismiss is DENIED on this ground.

## II.    MOTION TO STRIKE

RingCentral seeks to strike from the AC (1) requests for punitive damages, (2) allegations referencing mediation proceedings or settlement communications, (3) allegations of RingCentral's "pattern" or "history" of misconduct toward other customers, and (4) requests for attorneys' fees. Each request is DENIED.

### A.    Punitive Damages

California Civil Code section 3294 governs whether a party may seek punitive damages for a noncontractual breach of obligation. *See* CAL. CIV. CODE § 3294. Under this section, a plaintiff may recover punitive damages by showing, by "clear and convincing evidence," that the other party "has been guilty of oppression, fraud, or malice." *Id.* § 3294(a). RingCentral asserts that the AC does not plead "facts showing conduct sufficiently egregious to justify punishment" via punitive damages. Strike Mot. at 1. It also maintains that AmeriSave fails to satisfy Section 3294(b), which requires a party alleging fraud by a corporation to plead that an "officer, director, or managing agent" had "advance knowledge" of, or consciously disregarded, authorized, or ratified, an "act of oppression, fraud, or malice." CAL. CIV. CODE § 3294(b).

I agree with RingCentral that the AC currently lacks sufficient allegations to sustain a claim for punitive damages under Section 3294. As discussed above, the AC does not sufficiently allege RingCentral's fraudulent behavior. Nor does it plead specific allegations tying any alleged fraud to a director or other qualifying corporate officer. But it is plausible that AmeriSave could fix this issue by amending its counterclaim. I therefore DENY RingCentral's motion as premature.

15

### B.    Mediation and Settlement Communications

Federal Rule 408 prohibits the use of evidence of "conduct or a statement made during compromise negotiations about the claim" to prove the validity or amount of a disputed claim. RingCentral moves to strike (1) statements cited by AmeriSave that were allegedly made at a meeting aimed at facilitating an "amicable resolution for the Parties" (AC ¶¶ 28–29); and (2) references to "communications in preparation for and during the course of a mediation with a neutral mediator" (AC ¶¶ 31, 43, 54, 65).  Strike Mot. at 4.  AmeriSave responds that everything in its AC was "public information uncovered through an independent investigation undertaken in preparation for mediation" and is therefore not protected by any mediation privilege.  Strike Oppo. at 5–6.

I DENY RingCentral's request to strike.  Paragraphs 28 and 29 do not establish that the referenced communications occurred during mediation or settlement; rather, they describe discussions in which AmeriSave and Jose Serrano, SVP of Legal for RingCentral, addressed RingCentral's "commit[ment] to delivering a system to AmeriSave and working toward an amicable resolution."  AC ¶¶ 28–29.  On their face, these allegations do not appear to fall within Rule 408's scope.  It is unclear whether AmeriSave's references to RingCentral's "prior pattern of misconduct" is covered by the mediation privilege, however, as it is not adequately pleaded at this juncture.  What exactly did AmeriSave learn?  And by what means?  It would be speculative and premature to rule on this request to strike without allowing AmeriSave to amend its claims.

### C.    Allegations of "Pattern" of Misconduct

Next, RingCentral argues that AmeriSave "repeatedly alleges an unspecified 'pattern' or 'history' of misconduct toward unidentified customers," which it contends led to the discovery of the alleged fraud.  Strike Mot. at 5.  RingCentral asserts that such allegations are inadmissible under FRE 404 as improper character evidence.  *See id.*

RingCentral's argument is not persuasive.  First, AmeriSave does not appear to rely on an alleged pattern to prove RingCentral's propensity to mistreat customers; rather, it invokes such allegations to show RingCentral's absence of mistake, intent, and knowledge in connection with its fraud claims.  On that basis, these statements are likely permissible.  But as described above,

16

AmeriSave's fraud allegations fall short of Rule 9(b).  Who are these customers?  What specific misconduct did AmeriSave discover?  And how does this establish RingCentral's "pattern" of misconduct?  AmeriSave must add more facts to its amended counterclaim for these statements to not be struck.

### D.      Attorneys' Fees

Finally, RingCentral moves to strike AmeriSave's request for attorneys' fees on the ground that the AC lacks any specific statutory or contractual basis for recovery.  Strike Mot. at 5.  I DENY this request.  A motion to strike is proper if the matter to be stricken is "redundant, immaterial, impertinent, or scandalous."  Fed. R. Civ. P. 12(f).  AmeriSave's request for attorney's fees does not meet any of those standards.  And even if the request currently lacks legal support, Rule 12(f) is not meant to test the legal sufficiency of remedies.  This issue is best addressed later as this case progresses.

### CONCLUSION

For the foregoing reasons, RingCentral's motion to dismiss is GRANTED for AmeriSave's fraud and promissory estoppel claims and is DENIED for the breach of contract claim.  RingCentral's motion to strike is DENIED.  AmeriSave shall have twenty-one (21) days from the date of this Order to submit a Second Amended Counterclaim.

**IT IS SO ORDERED.**

Dated: April 29, 2026



William H. Orrick
United States District Judge

17